UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

JOSE YUQUILEMA, JOSE OREA,                    :
PABLO VELENDEZ, MARIO CARRASCO,               :
individually and on behalf of other           :
similarly situated,                           :
                                              :
                        Plaintiffs,           :
                                              :
        - against -                           :
                                              :
MANHATTAN'S HERO CORP., 350 FIFTH             :
AVENUE CORP., WILLIAM FERNANDEZ,              :
JACK MORDEHAI, and STEFANO TROIA,             :
                                              :
                        Defendants.           :
-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/26/14

**REPORT AND
RECOMMENDATION**

No. 13-CV-461 (WHP) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable William H. Pauley III, United States District Judge:**

Default judgment has been entered in this wage-and-hour action in favor of Plaintiffs

Jose Yuquilema, Jose Orea, Pablo Velendez, and Mario Carrasco against Defendants

Manhattan's Hero Corp. and William Fernandez (collectively, "defaulting Defendants").[1]  The

Court now considers the appropriate damages to which these Plaintiffs are entitled by virtue of

that default.  For the reasons that follow, I recommend that the Court enter judgment against the

defaulting Defendants in the amount of $396,992.64 in damages, as apportioned below, along

with pre-judgment interest, $8,810 in attorney's fees, and $430 in costs.[2]

---

[1]     Defendants 350 Fifth Avenue Corp., Jack Mordehai, and Stefano Troia did not default.

[2]     Although Plaintiffs and the non-defaulting Defendants consented to my jurisdiction over
this case pursuant to 28 U.S.C. § 636(c) and subsequently entered into a settlement, the findings
of this inquest into Plaintiffs' damages will be in the form of a Report and Recommendation
because the defaulting Defendants, by failing to appear, have not affirmatively so consented.
*See, e.g., Laboratorios Rivas, SRL v. Ugly & Beauty, Inc.*, No. 11-CV-5980 (RA) (JLC), 2013

USDC SDNY
DATE SCANNED   8/26/14

# I.  BACKGROUND

## A.   Established Facts as a Result of Defendants' Default

Under well-settled law, where a defendant has defaulted, the district court must accept all of plaintiffs' factual allegations as true, except with respect to damages. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). As such, the following facts are deemed established by virtue of the defaulting Defendants' failure to appear in this action.

### 1.   The Parties

During the period relevant to Plaintiffs' claims, all of the Defendants owned and operated two pizza and pasta restaurants in Manhattan.  Complaint filed January 22, 2013 ("Compl.") (Dkt. No. 1), ¶ 5.[3]  Manhattan's Hero Corp., incorporated in New York State, maintained its principal place of business at one of the two restaurants, Rosa's Pizza and Pasta, located at 168 West 27th Street. *Id.* at ¶ 7.  The other location, at 350 Fifth Avenue, was operated by Defendants as Rosa's Kosher Pizza and Pasta. *Id.* at ¶ 6.  Fernandez, as an owner of the Defendant corporations, had operational control over the business, including hiring and firing employees and setting their schedules and pay. *Id.* at ¶ 8.

---

WL 5977440, at *1, n.1 (S.D.N.Y. Nov. 12, 2013) (absent consent, magistrate judge not authorized to issue final order against defaulting defendants) (citing cases).

[3]      The numbering of paragraphs in the Complaint inexplicably runs beginning from 159 before resuming at 1 with the section identifying the parties, on page 4.

The Plaintiffs, each a resident of Brooklyn, were employed by Defendants at one or both restaurant locations.[4]  Jose Orea worked from 1996 until June 11, 2012 at both restaurants, preparing sauce, dough, sandwiches, and pastas.  Compl., ¶¶ 2, 38; Declaration of Jose Orea dated May 29, 2013 ("Orea Decl.") (Dkt. Nos. 16, 45), ¶ 5.  Pablo Velendez was employed at the Fifth Avenue location as a delivery person from approximately February 2009 until June 8, 2012.  Compl., ¶¶ 3, 56; Declaration of Pablo Velendez dated May 31, 2013 ("Velendez Decl.") (Dkt. Nos. 19, 46), ¶ 56.  Mario Carrasco worked as a pizza maker and counter attendant at both locations from approximately September 2008 until April 29, 2012.  Compl., ¶¶ 4, 75, 76; Declaration of Mario Carrasco dated May 31, 2013 ("Carrasco Decl.") (Dkt. Nos. 18, 47), ¶ 5.[5]

### 2. Defendants' Payment Practices

All three Plaintiffs were paid in cash.  Compl., ¶ 96.  Each regularly worked in excess of 40 hours per week, but was not compensated with overtime pay or with an hourly base pay that satisfied the minimum wage.  *Id.* at ¶ 92.  Plaintiffs were also not paid additional "spread of hours" pay for workdays that lasted longer than ten hours.  *Id.* at ¶ 93.  Carrasco was not paid any wages at all for the last month of his employment and, when he complained, was fired.  *Id.* at ¶ 88.  In the case of Velendez, Defendants failed to inform him that a tip deduction would be taken against his earned wages and failed to maintain a record of the tips he received while making deliveries.  *Id.* at ¶¶ 101-03.  Velendez was paid according to a lower hourly rate as an ostensibly-tipped employee, but on a daily basis he spent at least half his time doing non-

---

[4]    As explained below, *see infra*, at 9, I recommend that no judgment for damages be entered in the name of plaintiff Jose Yuquilema.  Accordingly, any reference to "Plaintiffs" hereafter refers to Orea, Velendez, and Carrasco only.

[5]    These declarations were originally filed in May 2013 in support of Plaintiffs' initial motion for a default judgment, and then refiled as part of Plaintiffs' current motion.

delivery, non-tipped duties. *Id.* at ¶¶ 57-58, 166. Defendants never provided Plaintiffs with either a statement of wages with each weekly payment or an annual notice of pertinent information about the terms of employment in English and in Spanish, their primary language, as required under New York law. *Id.* at ¶¶ 52, 54, 72, 74, 89, 91. Nor did Defendants post in their restaurants required signs advising their workers about their wage-and-hour rights or keep accurate timekeeping and payroll records. *Id.* at ¶¶ 95, 112-13. Defendants carried out these practices willfully in order to evade paying workers the entirety of their wages. *Id.* at ¶ 97.

## B. Procedural History

After filing their complaint on January 22, 2013, Plaintiffs submitted affidavits certifying that the complaint and summons had been served on Defendants on May 3, 2013. *See* Affidavits of Service (Dkt. Nos. 3-7). On May 31, 2013, on consent of the parties, Defendant Jack Mordehai filed an answer (Dkt. No. 22), and Plaintiffs moved for default judgment against the remaining four Defendants, none of whom had answered or otherwise appeared: Stefano Troia, 350 Fifth Avenue Corp., William Fernandez, and Manhattan's Hero Corp. Troia subsequently filed an untimely answer on June 20, 2013 (Dkt. No. 24).

On June 26, 2013, Judge Pauley granted Plaintiffs' motion for default judgment as to liability against three of the Defendants, excepting Troia because his untimely answer did not prejudice Plaintiffs, but deferred assessing damages against them pending resolution of the claims against the non-defaulting Defendants. *See* Memorandum and Order dated June 25, 2013 (Dkt. No. 25), at 2. On December 17, 2013, Plaintiffs and the appearing Defendants, Mordehai and Troia, consented to my jurisdiction for all purposes. *See* Consent to Jurisdiction by U.S. Magistrate Judge (Dkt. No. 33). Plaintiffs subsequently resolved their claims during a settlement conference held before me as against Mordehai, Troia, and 350 Fifth Avenue Corp., leaving

4

Manhattan's Hero Corp. and Fernandez as the defaulting Defendants in this action. *See* Order of

Partial Dismissal dated January 22, 2014 (Dkt. No. 40); *see also* Order dated January 22, 2014

(Dkt. No 39) (vacating default judgment against 350 Fifth Avenue Corp. as a result of

settlement).

On March 3, 2014, Plaintiffs submitted papers in support of the precise amount of

damages to be awarded against the defaulting Defendants, including a Memorandum of Law

("Pl. Mem.") (Dkt. No. 42), an affirmation from Plaintiffs' counsel Michael Faillace, Esq.

("Faillace Decl.") (Dkt. No. 43), and declarations from the four named Plaintiffs (Dkt. Nos. 44-

47). To date, the defaulting Defendants have not responded.

## II.   DISCUSSION

### A.  Applicable Burden of Proof

Provided a plaintiff's factual allegations, deemed admitted by virtue of default, are

"sufficient to state a cause of action," *Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509

Fed. App'x 54, 56 (2d Cir. 2013), the district court must then calculate the amount of damages to

which he is entitled. The plaintiff bears the burden of establishing his entitlement to recovery

and must substantiate his claims with admissible evidence to prove the extent of his damages.

*See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)

(citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). Such evidence may be presented in

the form of affidavits and other appropriate documentary submissions, without the need of an in-

person court hearing, "as long as [the reviewing court has] ensured that there was a basis for the

damages specified in the default judgment." *Transatl. Marine Claims Agency, Inc. v. Ace*

*Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok v. ContiCommodity Servs.,*

*Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)); *see also* Fed. R. Civ. P. 55(b)(2).

In a wage-and-hour action, a plaintiff "has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). However, both federal and state law require that an employer maintain "records of employee wages, hours, tips, and other conditions and practices of employment maintained by him." 29 U.S.C. § 211(c); 12 N.Y. Comp. Codes R. & Regs. ("NYCRR") § 142-2.6.  Where such documentation is not proffered, as is the case where an employer defaults, the employee may establish his right "by relying on his recollection alone." *Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005).  An affidavit setting forth the requisite details about the number of hours worked and pay received is sufficient. *See, e.g.*, *Angamarca v. Pita Grill 7 Inc.*, No. 11-CV-7777 (JGK) (JLC), 2012 WL 3578781, at *3 (S.D.N.Y. Aug. 2, 2012), Report and Recommendation, *adopted,* Order dated December 13, 2012 (Dkt. No. 39).

Once an employee has presented his evidence, an employer may "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Lanzetta v. Florio's Enters., Inc.*, 763 F. Supp. 2d 615, 618 (S.D.N.Y. 2011) (quoting *Mt. Clemens Pottery Co.*, 328 U.S. at 688).  "If the employer fails to do so, the court may enter judgment in the employee's favor . . . 'even though the result be only approximate.'" *Id.* (quoting *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997)).

**B.  Statutes of Limitations**

Plaintiffs bring their claims pursuant to both the federal Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  The statute of limitations is six years under the NYLL and two years under the FLSA. *See* NYLL § 663(3); 29 U.S.C. § 255(a). However, if an employer's acts are found to be "willful," the statute of limitations under the FLSA increases to

three years.  29 U.S.C. § 255(a).  Here, as Plaintiffs allege that the unlawful payment practices

were carried out willfully, Compl., ¶¶ 95, 97-98, 100, which the Court accepts as true by virtue

of the entry of default, the three-year federal period applies.  *See, e.g.*, *Angamarca*, 2012 WL

3578781, at *4.  Accordingly, since the complaint was filed on January 22, 2013, Plaintiffs may

recover damages arising out of any employment going back three years under federal law, or

from January 23, 2010 onward, and six years under state law, or January 23, 2007 onward.

## C.  Unpaid Minimum, Overtime, and "Spread of Hours" Wages

### 1.  Legal Standards

Both federal and state law require certain employers to pay employees a minimum wage

for an employee's first 40 hours of work each week.  *See* 29 U.S.C. § 206(a)(1); NYLL

§ 652(1).[6]  Plaintiffs may recover any underpayment below the minimum wage as set by either

federal or state law, whichever provides greater relief.  *See Peralta v. M & O Iron Works, Inc.*,

No. 12-CV-3179 (ARR) (RLM), 2014 WL 988835, at *7 (E.D.N.Y. Mar. 12, 2014); *Wicaksono

v. XYZ 48 Corp.*, No. 10-CV-3635 (LAK) (JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2,

2011), Report and Recommendation, *adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011).  At

all times relevant to Plaintiffs' claims, the NYLL provided for a minimum wage that was higher

---

[6]     An employer may pay a rate less than the minimum wage if an employee customarily
receives tips that bring his total compensation above the minimum.  29 U.S.C. § 203(m); 12
N.Y.C.R.R. § 146-1.3.  *See also Lopez v. Pio Pio NYC, Inc.*, No. 13-CV-4490 (HB), 2014 WL
1979930, at *2 (S.D.N.Y. May 15, 2014); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 84
(E.D.N.Y. 2012).  However, the employer must meet certain conditions, including informing the
employee either orally or in writing about his intent to apply this tip credit and permitting the
employee to retain all of the tips.  *See Jiminez v. KLB Foods, Inc.*, No. 12-CV-6796 (JPO), 2014
WL 2738533, at *3 (S.D.N.Y. June 17, 2014); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F.
Supp. 2d 253, 287 (S.D.N.Y 2011).  A tip credit cannot be applied if an employee performs non-
tipped tasks unrelated to his primary duties for more than 20% of his working time.  12
N.Y.C.R.R. § 146-2.9.

or identical to the FLSA rate, and so the state figure will be used to calculate their damages. *Compare* NYLL § 652 (requiring employers to pay $7.15 per hour as of January 1, 2007 and $7.25 per hour as of July 24, 2009) *with* 29 U.S.C. § 206(a)(1) (setting federal minimum wage at $5.15 from September 1, 1997 to July 23, 2007, $5.85 as of July 24, 2007, $6.55 as of July 24, 2008, and $7.25 as of July 24, 2009). Both federal and state law also mandate that an employee be paid at a rate not less than one-and-a-half times the regular rate for any time worked beyond the first 40 hours per week. *See* 29 U.S.C. § 207(a)(1); 12 NYCRR § 142-2.2 (overtime rate calculated in the same manner as under the FLSA). *See also Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 113-14 (2d Cir. 2013).

Additionally, under the NYLL only, an employee is entitled to receive an additional hour of compensation at the state minimum wage for any day in which his "spread of hours" – that is, the period of time between when he first begins and then finally completes work, regardless of any breaks – exceeds ten hours. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 241-42 & n.4 (2d Cir. 2011) (citing 12 NYCRR § 137-1.7 and its replacement as of December 29, 2010, 12 NYCRR § 146-1.6). Through the end of 2010, this requirement only applied to employees paid at the New York minimum wage and did not "ensure additional compensation to employees whose wages sufficiently exceed that floor." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 118 (S.D.N.Y. 2012) (citations omitted). The applicable regulation was amended, however, to extend eligibility effective January 1, 2011 for "spread of hours" pay to "all employees in restaurants . . . *regardless* of a given employee's regular rate of pay." *Id.* at 119 (citing 12 N.Y.C.R.R. § 146-1.6(d)).

8

## 2. Application

Plaintiffs' first through fifth causes of action allege violations of federal and state minimum, overtime, and "spread of hours" wage laws. Compl., ¶¶ 117-40. While these allegations are deemed admitted, the Court notes that the documents filed by Plaintiffs' counsel in support of a damages calculation contain numerous inconsistencies between the facts presented in the complaint, Plaintiffs' sworn affidavits, and counsel's supporting submissions. The most glaring concern Yuquilema, who alleges in the complaint that he typically worked 84 hours per week, yet in his sworn declaration asserts that he worked 25 hours per week. *Compare* Compl. ¶ 29 *with* Yuquilema Decl., ¶ 10. I directed Plaintiffs' counsel to make an additional submission clarifying Yuquilema's claims for damages, but counsel failed to do so despite being given a one-week extension. *See* Orders dated June 16 and 23, 2014 (Dkt. Nos. 50, 52). Given such a stark discrepancy, I consequently recommend that, based on the current record, the Court deny entry of judgment for damages in favor of Yuquilema. *See, e.g.*, *Pineda v. Masonry Const., Inc.,* 831 F. Supp. 2d 666, 676 (S.D.N.Y. 2011) (declining to assess damages for two plaintiffs as part of inquest where documentary submissions contained discrepancies preventing an award calculation "to a reasonable certainty").

As to the remaining Plaintiffs, the factual allegations concerning their wage-and-hour claims are more consistent from the complaint to their declarations, and the discrepancies less conspicuous. However, the number of weekly hours worked as indicated on the damages spreadsheet provided by Plaintiffs' counsel does not align precisely with the Plaintiffs' sworn accounts. *Compare, e.g.*, Faillace Decl., Ex. M (documenting Orea as having worked between 56 and 72.5 weekly hours) *with* Orea Decl., ¶¶ 10-12 (48-60 weekly hours). The spreadsheet includes other inexplicable errors, for instance, incorrectly identifying the New York minimum

9

wage as $6.75 in 2007 and 2008. *See* Faillace Decl., Ex. M.  Because damages must be

established with "reasonable certainty" and "based only on admissible evidence," *Norcia v.*

*Dieber's Castle Tavern, Ltd.*, 980 F. Supp. 2d 492, 500 (S.D.N.Y. 2013) (citations omitted), the

Court does not look to counsel's unreliable spreadsheets or the unsworn complaint, and instead

relies on the sworn testimony of Plaintiffs as submitted in their affidavits in order to calculate the

appropriate judgment to be awarded. *See also Li Ping Fu v. Pop Art Int'l Inc.*, No. 10-CV-8562

(DLC) (AJP), 2011 WL 4552436, at *1 (S.D.N.Y. Sept. 19, 2011) ("[D]amages cannot be based

solely on the complaint or unsworn information."), Report and Recommendation, *adopted as*

*modified*, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011).

### a.  Orea's Unpaid Wages

Orea worked for Defendants from 1996 until June 11, 2012.  Orea Decl., ¶ 5.  Over his

final five to six years of employment, he worked between 48 and 60 hours per week, receiving a

fixed weekly wage of $400 to $480 regardless of any fluctuations in his work hours.  *Id.* at ¶¶ 10-

14.  Despite working more than 40 hours per week, he received no overtime premium.  *Id.* at

¶ 16.

From January 23, 2007, the beginning of the limitations period covering his NYLL

claims, through December 2009, Orea worked 60 hours and received $480 per week.  *Id.* at

¶¶ 10, 12.  As a matter of law, "there is a rebuttable presumption that a weekly salary covers 40

hours."  *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005).  Because

none of the defaulting Defendants has overcome this presumption "by showing the existence of

an employer-employee agreement that the salary cover a different number of hours," *id.*

(quotation omitted), the Court divides $480 by 40 hours, to arrive at an effective hourly rate of

$12 an hour for Orea.  Thus, Orea was properly paid the minimum wage, contrary to his

assertion otherwise.  Orea Decl., ¶ 15.  However, he should have received overtime pay at a rate

of $18 an hour, or one-and-a-half times his base pay (1.5 x $12), for the 20 hours above 40 he

worked weekly during this period.  He is owed $360 per week as a result and, over the 153

weeks in this period, $55,080 ($18 x 20 hours x 153 weeks).

From January 2010 until May 2012, Orea worked 56 hours and received the same $480

per week.  *Id.* at ¶¶ 11, 12.  Orea's respective base and overtime rates of $12 and $18 per hour

again apply and, working 16 uncompensated overtime hours, he should have been paid $288 per

week in overtime.  For the 123 weeks in this period, therefore, Orea is owed $35,424 ($18 x 16

hours x 123 weeks).

From May 2012 until June 11, 2012, Orea worked 48 hours and received $400 per week.

*Id.* at ¶¶ 12, 13.  His base rate consequently was $10 per hour ($400 divided by 40 hours) and his

overtime rate $15 per hour.  Because he worked 8 overtime hours per week over the three weeks

in this period, he is owed $360 ($15 x 8 hours x 3 weeks).  In total across these periods, Orea is

owed $90,864 in overtime wages.

**Table 1: Orea's Unpaid Overtime Wages**

|  | 1/23/07 – 12/31/09 | 1/1/10 – 05/12 | 05/12-6/11/12 |
|---|---|---|---|
| **Number of Weeks** | 153 | 123 | 3 |
| **Weekly Salary** | $480 | $480 | $400 |
| **Hourly Base Rate** (Weekly Salary / 40 Hours) | $12 | $12 | $10 |
| **Hourly OT Rate** (1.5 x Base Rate) | $18 | $18 | $15 |
| **Number of Weekly OT Hours** (Hours Above 40) | 20 | 16 | 8 |
| **Weekly Unpaid OT** | $360 | $288 | $120 |
| **Unpaid OT** | $55,080 | $35,424 | $360 |

**Total Unpaid Overtime: $90,864**

Orea also affirms that Defendants failed to pay him "all the wages [he is] owed," or $400 of his base wages.  Orea Decl., ¶ 22; *see* Compl., ¶ 55.  However, neither the complaint nor Orea's declaration specify from which time period this particular pay was earned; for instance, it could stem from work Orea performed sometime after he started work in 1996 but before the limitations period, for which he is ineligible to receive damages.  Consequently, Orea is not entitled to recover this amount.  As for any "spread of hours" pay, although Orea attests to completing ten-hour workdays, e.g., 11:00 a.m. to 9:00 p.m. and 9:00 a.m. to 7:00 p.m., in no instance does he state that any of his workdays *exceeded* ten hours.  Without this statutory trigger, Orea is not entitled to any "spread of hours" pay.  Therefore, Orea is owed a total of **$90,864 in unpaid wages**, all from his overtime claim.

### b.  Velendez's Unpaid Wages

Defendants employed Velendez between February 2009 and June 8, 2012.  Velendez Decl., ¶ 5.  During his entire employment, he worked 54.5 hours per week, for which he received $260 weekly.  Consequently, Velendez was not compensated appropriately with the applicable minimum and overtime wage.[7]

Calculating Velendez's base pay in the same manner as described for Orea, in this case dividing a $260 weekly salary by 40 hours, the Court arrives at a figure of $6.50 per hour.  Between February 2009 and July 23, 2009, the applicable minimum wage was $7.15.  Velendez

---

[7]    The complaint suggests that Velendez, as a delivery worker, received tips as part of his remuneration.  Compl., ¶ 68.  However, even had defaulting Defendants appeared to assert this fact in order to claim a tip credit entitling them to pay Velendez a lesser hourly wage, *see supra* n.6, that argument would be unavailing because Velendez spent more than 20% of his time engaged in non-tipped work and he was not properly informed about any credit.  *See* Velendez Decl., ¶¶ 7-8, 21.  Consequently, the regular minimum wage applies as the measure by which to calculate Velendez's damages.

consequently was underpaid by $0.65 for each of his base 40 hours over the 23 weeks in this

period, resulting in $598 in unpaid minimum wages ($0.65 x 40 hours x 23 weeks). He should

also have received an overtime wage of $10.73 for each of the 14.5 hours above 40 he worked

each week (1.5 x $7.15), or $3,578.46 over this same time frame ($10.73 x 14.5 hours x 23

weeks). Between July 24, 2009 and June 8, 2012, the minimum wage was $7.25. Accordingly,

Velendez was underpaid by $0.75 for each of his base 40 hours during this period, which

encompasses 150 weeks, and is owed $4,500 ($0.75 x 40 hours x 150 weeks). The overtime rate

for this period was $10.88 per hour (1.5 x $7.25). Therefore, for the 14.5 overtime hours he

worked over each of the 150 weeks, Velendez is owed $23,664 ($10.88 x 14.5 hours x 150

weeks).

**Table 2: Velendez's Unpaid Minimum and Overtime Wages**

|  | 2/1/09 – 7/23/09 | 7/24/09 – 6/8/12 |
|---|---|---|
| **Number of Weeks** | 23 | 150 |
| **Weekly Salary** | $260 | $260 |
| **Hourly Base Rate** (Weekly Salary / 40 Hours) | $6.50 | $6.50 |
| **Minimum Wage** | $7.15 | $7.25 |
| **Underpayment Per Hour** | $0.65 | $0.75 |
| **Underpayment Per Week** (Hourly Underpayment x 40) | $26 | $30 |
| **Unpaid Minimum Wages** | **$598** | **$4,500** |

**Total Unpaid Minimum Wages: $5,098**

|  | 2/1/09 – 7/23/09 | 7/24/09 – 6/8/12 |
|---|---|---|
| **Hourly OT Rate** (1.5 x Minimum Wage) | $10.73 | $10.88 |
| **Number of Weekly OT Hours** (Hours Above 40) | 14.5 | 14.5 |
| **Weekly Unpaid OT** | $155.59 | $157.76 |
| **Unpaid OT** | **$3,578.46** | **$23,664** |

**Total Unpaid Overtime: $27,242.46**

Velendez also affirms that he was not paid $820 in base wages. *Id.* at ¶ 16; *see* Compl.,

¶ 67. Unlike Orea's similarly vague allegation, Velendez may recover this amount because the

entirety of his employment with Defendants fell within the six-year NYLL limitations period;

there is no doubt therefore, that even though he does not specify exactly when this pay was

earned, Velendez has an actionable claim to this underpayment. Finally, Velendez does not

allege that he is owed any "spread of hours" pay. Adding these various sums together, Velendez

is owed **$33,160.46 in unpaid wages** ($5,098 in minimum wage pay + $27,242.46 in overtime +

$820 base pay).

### c. Carrasco's Unpaid Wages

Carrasco worked for Defendants from September 2008 until April 29, 2012. Carrasco

Decl., ¶ 5. During this time, he was paid $12 an hour and worked 61.5 hours per week. *See id.*

at ¶¶ 10, 12.[8] Despite working more than 40 hours per week, he received no overtime premium.

*Id.* at ¶ 16.

Based on his regular rate, Carrasco was entitled to an overtime rate of $18 per hour (1.5 x

$12). He worked 21.5 overtime hours weekly during his 190-week employment and, as he

should have been paid $387 each week in overtime, he is owed $73,530 in unpaid overtime

wages ($18 x 21.5 hours x 190 weeks).

---

[8]     Carrasco worked 62 hours per week three out of every four weeks, and 60 hours the
fourth week, Carrasco Decl., ¶ 10, resulting in an average figure of 61.5 weekly hours, which the
Court utilizes for ease of reference.

**Table 3: Carrasco's Unpaid Overtime Wages**

|  | 9/01/08 – 4/29/12 |
|---|---|
| **Number of Weeks** | 190 |
| **Hourly Base Rate** | $12 |
| **Hourly Overtime Rate** (1.5 x Base Rate) | $18 |
| **Number of Weekly Overtime Hours** (Hours Above 40) | 21.5 |
| **Unpaid Overtime Per Week** | $387 |
| **Total Unpaid Overtime** | **$73,530** |

Carrasco's usual workday was from 4:00 p.m. until 2:00 a.m., or precisely a ten-hour spread. *Id.* at ¶ 10. However, for three weeks out of every four, he worked an additional two hours on Sunday, meaning a workday with a spread of more than ten hours. *Id.* For these occasions, he is entitled to an additional hour at the minimum wage as "spread of hours" pay. However, because he was paid at a base rate of $12, which was higher than the minimum wage, he may receive this premium only for his period of employment after January 1, 2011. *See Flores*, 284 F.R.D. at 119 (noting employees earning more than minimum wage not eligible for "spread of hours" pay prior to 2011). Between January 1, 2011 and April 29, 2012, a 69-week span, Carrasco worked one spread-eligible day in 51 of those weeks (or three out of every four weeks); as he should have been paid an additional hour at the applicable NYLL minimum wage, $7.25, for each of these weeks, Carrasco is owed $369.75 in unpaid "spread of hours" wages. In sum, Carrasco is owed **$73,899.75 in unpaid wages** ($75,530 in overtime + $369.75 in spread pay).

## D. Liquidated Damages

### 1. Legal Standards

Under the FLSA, a plaintiff who demonstrates that he was improperly denied either minimum or overtime wages may recover, in addition to reimbursement of these unpaid wages,

15

an equal amount as liquidated damages. 29 U.S.C. § 216(b). The NYLL also authorizes liquidated damages where an employer's violations were willful, an allegation which the Court deems admitted given the default. *See Angamarca*, 2012 WL 3578781, at *8; NYLL §§ 198(l-a), 663(1). As of April 9, 2011, these state damages are set at 100 percent of unpaid wages; prior to that date, they were calculated at 25 percent of the lost pay. *See* NYLL § 663(1); 2010 N.Y. Sess. Laws, ch. 564 (S. 8380) (McKinney).[9]

Courts in this Circuit are split as to whether a plaintiff is entitled to recover liquidated damages under both the FLSA and NYLL. *Compare Berrezueta v. Royal Crown Pastry Shop, Inc.*, No. 12-CV-4380 (FB) (RML), 2013 WL 6579799, at *6 (E.D.N.Y. Dec. 16, 2013) ("[M]ajority view is that prevailing plaintiffs may recover liquidated damages under both the FLSA and the NYLL.") *with Greathouse v. JHS Sec., Inc.*, No. 11-CV-7845 (PAE) (GWG), 2012 WL 3871523, at *7 (S.D.N.Y. Sept. 7, 2012) (declining to award both because liquidated damages under the two statutes compensate the same harm), Report and Recommendation, *adopted as modified*, 2012 WL 5185591 (S.D.N.Y. Oct. 19, 2012). This Court is in agreement with the majority view, which allows for "simultaneous recovery," based on the theory that liquidated damages under federal and New York law serve different functions. *Angamarca*, 2012 WL 3578781, at *8; *see also Gurung v. Malhotra*, No. 10-CV-5086 (VM) (FM), 2012 WL 691532, at *7 (S.D.N.Y. Feb. 22, 2012), Report and Recommendation, *adopted*, 2012 WL 983520

---

[9]     "[A] court, in its discretion, may deny liquidated damages if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith. It is the employer's burden to establish such good faith by plain and substantial evidence. Where, as here, a defendant employer has defaulted, the court plainly cannot find that it has made the showing of good faith necessary to defeat an award of liquidated damages." *Solis v. Tally Young Cosmetics, LLC*, No. 09-CV-4804 (SJ) (JO), 2011 WL 1240341, at * 14 n.15 (E.D.N.Y. Mar. 4, 2011) (internal quotation marks and citations omitted).

(S.D.N.Y. Mar. 13, 2012). The Second Circuit has noted that the FLSA's liquidated damages are not a penalty, but rather a means of compensating employees "for losses they might suffer by reason of not receiving their lawful wage at the time it was due." *Reich v. S. New England Telecomm. Corp.*, 121 F.3d. 58, 71 & n.4 (2d Cir. 1997) (citation omitted). By contrast, liquidated damages under the NYLL are punitive in nature, and used to deter employers from willfully withholding wages. *Yu G.Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 261-62 (S.D.N.Y. 2008).

Accordingly, the Court recommends that Plaintiffs be awarded liquidated damages under both federal and New York law based on their recovery for unpaid wages for their two respective periods of limitation. For purposes of determining federal liquidated damages, the calculation should not be based on compensatory damages arising from the state minimum wage (which is otherwise used to provide Plaintiffs with greater relief); rather, the figure should be calculated as "the amount of actual damages that would have been awarded had the federal minimum wage rate applied." *Angamarca*, 2012 WL 3578781, at *7 (citations omitted).

### 2. Application

#### a. Orea's Liquidated Damages

Orea is entitled to receive federal liquidated damages of 100 percent of his uncompensated wages for the three years preceding the filing date of the complaint, or January 23, 2010 onward. As calculated above, Orea is owed $288 per week in unpaid overtime pay from this date until May 2012. As there are 120 weeks between January 23, 2010 and May 2012, Orea is owed $34,560 in liquidated damages, equaling the total of his unpaid overtime wages ($18 x 16 hours x 120 weeks). As also calculated above, he is also owed $360 in unpaid overtime for May and June

2012 ($15 x 8 hours x 3 weeks), an amount Orea should receive again in liquidated damages.

Consequently, Orea should receive **$34,920 in total liquidated damages under the FLSA**.

### Table 4: Orea's FLSA Liquidated Damages

|  | **1/23/10 – 5/12** | **5/12 – 6/11/12** |
|---|---|---|
| **Unpaid Overtime** | $34,560<br>($18 x 16 hours x 120 weeks) | $360<br>($15 x 8 hours x 3 weeks) |
| **FLSA Liq. Dam. Rate** | 100% | 100% |
| **FLSA Liq. Dam. Due** | **$34,560** | **$360** |

**Total FLSA Liquidated Damages: $34,920**

As to Orea's NYLL liquidated damages, the calculation requires breaking down his employment into several blocks of time because the formula for determining liquidated damages changed, as did Orea's hours. The first runs from January 23, 2007, the start of the New York limitations period, to December 2009. As discussed above, Orea is owed $360 in unpaid overtime per week during this block, for a total of $55,080 ($18 x 20 hours x 153 weeks). As the 25 percent rate for determining NYLL liquidated damages applies for this time period, Orea is owed $13,770 ($55,080 in compensatory damages x 25 percent). Between January 2010 and April 8, 2011, Orea was underpaid $288 a week, or $19,008 in total ($18 x 16 hours x 66 weeks). The same 25 percent rate again applies, for a result of $4,752 ($19,008 x 25 percent). Between April 9, 2011 and May 2012, Orea was underpaid $288 a week for a total of $16,416 in unpaid wages ($18 x 16 hours x 57 weeks); but as the NYLL liquidated damages provision for this period is 100 percent, Orea is due the same amount ($16,416 x 100 percent). Finally, Orea is owed $360 in unpaid overtime for May and June 2012 ($15 x 8 hours x 3 weeks); sums he should again receive in addition as liquidated damages ($360 x 100 percent). Accordingly, Orea should receive **$35,298 in total liquidated damages under the NYLL**.

**Table 5: Orea's NYLL Liquidated Damages**

|  | 1/23/07 – 12/31/09 | 1/1/10 – 4/8/11 | 4/9/11 – 5/12 | 5/12 – 6/11/12 |
|---|---|---|---|---|
| **Unpaid Overtime** | $55,080 ($18 x 20 hours x 153 weeks) | $19,008 ($18 x 16 hours x 66 weeks) | $16,416 ($18 x 16 hours x 57 weeks) | $360 ($15 x 8 hours x 3 weeks) |
| **NYLL Liq. Dam. Rate** | 25% | 25% | 100% | 100% |
| **NYLL Liq. Dam. Due** | **$13,770** | **$4,752** | **$16,416** | **$360** |

**Total NYLL Liquidated Damages: $35,298**

### b. Velendez's Liquidated Damages

To calculate Velendez's federal liquidated damages, the Court notes that between January 23, 2010 and the end of his employment on June 8, 2012, a period covering 123 weeks, Velendez was owed $0.75 for each of his base 40 weekly hours (difference between FLSA minimum wage rate of $7.25 and his actual rate of $6.50), or $3,690, and $10.88 (overtime rate based on FLSA minimum wage) for each of his 14.5 weekly overtime hours, or $19,404.48. Calculated at 100 percent of these compensatory damages, Velendez's **liquidated damages award under the FLSA is therefore $23,094.48.**[10]

---

[10] Not taken into consideration for the calculation of Velendez's federal and state liquidated damages is his award of $820 for unpaid base wages. Although this claim must necessarily derive from work performed sometime within the limitations period, as described above, because Velendez does not specify when these owed wages accrued, the Court cannot determine whether they are eligible to receive federal liquidated damages and which rate of calculating state liquidated damages should apply. Accordingly, no award of liquidated damages can be made on this portion of Velendez's recovery.

**Table 6: Velendez's FLSA Liquidated Damages**

|  | 1/23/10 – 6/8/12 |
|---|---|
| **Unpaid Minimum Wages** | $3,690 |
|  | ($0.75 x 40 hours x 123 weeks) |
| **Unpaid Overtime** | $19,404.48 |
|  | ($10.88 x 14.5 hours x 123 weeks) |
| **FLSA Liq. Dam. Rate** | 100% |
| **Total FLSA Liq. Dam. Due** | $23,094.48 |

To calculate Velendez's state liquidated damages, there are three applicable time periods. During the first, from the start of his employment in February 2009 to July 23, 2009, as discussed above, Velendez was underpaid $598 in minimum wage and $3,578.46 in overtime violations. The applicable rate of 25 percent of actual damages results in an award of liquidated damages of $1,044.12. For the second period, running 89 weeks from July 24, 2009 to April 8, 2011, Velendez was underpaid by $0.75 for each of his base 40 weekly hours (as the minimum wage increased by 10 cents to $7.25 per hour), or $2,670, and $10.88 for each of his 14.5 overtime hours, or $14,040.64. Calculated at 25 percent of this total, Velendez's liquidated damages award for this period is $4,088.66. For the third period, covering 60 weeks between April 9, 2011 and June 8, 2012, the 100 percent rate applies, and he is owed $0.75 for each of his 40 weekly base hours, or $1,800, and $10.88 for each of his 14.5 weekly overtime hours, or $9,465.60. Velendez should thus receive $11,845.60 as an identical amount in liquidated damages. In total, Velendez's **NYLL liquidated damages award is $16,978.38**.

**Table 7: Velendez's NYLL Liquidated Damages**

|  | 2/1/09 – 7/23/09 | 7/24/09 – 4/8/11 | 4/9/11 – 6/8/12 |
|---|---|---|---|
| **Unpaid Minimum Wages** | $598<br>($0.65 x 40 hours x 23 weeks) | $2,670<br>($0.75 x 40 hours x 89 weeks) | $1,800<br>($0.75 x 40 hours x 60 weeks) |
| **Unpaid Overtime** | $3,578.46<br>($10.73 x 14.5 hours x 23 weeks) | $14,040.64<br>($10.88 x 14.5 hours x 89 weeks) | $9,465.60<br>($10.88 x 14.5 hours x 60 weeks) |
| **NYLL Liq. Dam. Rate** | 25 percent | 25 percent | 100 percent |
| **NYLL Liq. Dam. Due** | **$1,044.12** | **$4,088.66** | **$11,845.60** |

**Total NYLL Liquidated Damages: $16,978.38**

### c.   Carrasco's Liquidated Damages

Carrasco is entitled to receive an amount equal to his compensatory damages as federal liquidated damages for his employment between January 23, 2010 and April 29, 2012, his last day of work.  As calculated above, Carrasco's damages for unpaid overtime amounted to $387 per week over his entire tenure with Defendants.  For this 118-week period, therefore, he is owed **$45,666 in FLSA liquidated damages**, an amount equal to his unpaid overtime pay.

**Table 8: Carrasco's FLSA Liquidated Damages**

|  | 1/23/10 – 4/29/12 |
|---|---|
| **Unpaid Overtime** | $45,666<br>($18 x 21.5 hours x 118 weeks) |
| **FLSA Liq. Dam. Rate** | 100% |
| **Total FLSA Liq. Dam. Due** | **$45,666** |

Calculation of Carrasco's NYLL liquidated damages, as with the other Plaintiffs, involves breaking down his employment into discrete blocks of time governed by different formulae. Between the start of his employment in September 2008 and April 8, 2011, a period of 153 weeks, he was owed $387 per week in unpaid overtime, or $59,211.  With an applicable rate of 25

percent of actual damages during this time, Carrasco is due $14,802.75 in liquidated damages. Between April 9, 2011 and the end of Carrasco's employment on April 29, 2012, a period of 55 weeks, he was again owed $387 per week in unpaid overtime, or $21,285. As the applicable rate increased to 100 percent for this time, Carrasco is owed the same amount in liquidated damages. Thus, for the unpaid overtime portion of his damages, Carrasco should receive $36,087.75 in liquidated damages.

Carrasco may also receive NYLL liquidated damages stemming from his unpaid "spread of hours" wages. Here too, the calculation requires looking at two distinct periods of time. Between January 1, 2011, when Carrasco first became eligible for "spread of hours" pay and April 8, 2011, he was entitled to an extra hour's compensation at the NYLL minimum wage, $7.25, nine times (or three out of every four weeks), or $65.25. The 25 percent of actual damages rate applied, resulting in liquidated damages of $16.32 for this period. Between April 9, 2011 and April 29, 2012, Carrasco was entitled to an extra hour's compensation at $7.25 41 times (again, three out of every four weeks), or $297.25. As the 100 percent rate applies for this period, Carrasco is owed the same amount in liquidated damages. In sum, he is owed $313.57 in NYLL liquidated damages for the "spread of hours" portion of his damages. Together with the award arising from his unpaid overtime pay, Carrasco is owed **$35,611.57 in total NYLL liquidated damages**.

**Table 9: Carrasco's NYLL Liquidated Damages**

|  | 9/1/08 – 4/8/11 | 4/9/11 – 4/29/12 |
|---|---|---|
| **Unpaid Overtime** | $59,211 ($18 x 21.5 hours x 153 weeks) | $21,285 ($18 x 21.5 hours x 55 weeks) |
| **NYLL Liq. Dam. Rate** | 25% | 100% |
| **NYLL Liq. Dam. Due** | **$14,802.75** | **$21,285** |

Total NYLL Liquidated Damages for Unpaid Overtime: $35,298

|  | 1/1/11 – 4/8/11 | 4/9/11 – 4/29/12 |
|---|---|---|
| **Number of Weeks with One Workday > 10 Hours** | 9 | 41 |
| **Unpaid "Spread of Hours" Pay** (Number of Eligible Weeks x $7.25) | $65.25 | $297.25 |
| **NYLL Liq. Dam. Rate** | 25% | 100% |
| **NYLL Liq. Dam. Due** | **$16.32** | **$297.25** |

Total NYLL Liquidated Damages for "Spread of Hours" Pay: $313.57
Total NYLL Liquidated Damages: $35,611.57

## E.   No Recovery for Failure to Provide Wage Notices

Plaintiffs' sixth cause of action seeks recovery for Defendants' failure to provide wage notices as required under New York law. Compl., ¶¶ 141-43. As of April 9, 2011, an employer must provide an employee with a wage notice within ten business days of the start of employment and then annually every February thereafter. *See Guan Ming Lin v. Benihana New York Corp.*, No. 10-CV-1335 (RA) (JCF), 2012 WL 7620734, at *2 (S.D.N.Y. Oct. 23, 2012) (discussing NYLL § 195(1)(a) as implemented by the Wage Theft Prevention Act), Report and Recommendation, *adopted*, 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013). The notice must include, *inter alia*, information about the rate and basis of pay, any tip or other allowances claimed by the employer, and the name and principal address of the employer, and it must be provided in English or in the primary language of the employee. *See* NYLL § 195(1)(a). "If any employee is not

23

provided within ten business days of his or her first day of employment a notice . . . he or she may recover in a civil action damages of fifty dollars for each work week that the violations occurred or continue to occur, but not to exceed a total of two thousand five hundred dollars." NYLL § 198(1-b).

Oddly, the NYLL extends this private cause of action to employees whose employer fails to provide the initial notice at their hire, but not for subsequent failures to furnish the annual notice in following years. *Id.* There is no obviously discernible reason why this should be the case, since Section 195(1) speaks of the provision of the notice both at time of hiring and annually thereafter in equally obligatory terms. Nevertheless, as a consequence, none of the Plaintiffs here may recover under this provision of the NYLL – even though Defendants failed to provide the requisite annual notices in violation of Section 195(1) – as each commenced employment prior to April 9, 2011. "The plain language of the statute . . . confers a private right of action upon those who do not receive their notice at the time of hiring, but not upon those who do not receive it on or before February first of any subsequent year." *Guan Ming Lin*, 2012 WL 7620734, at *7-8 (finding plaintiffs whose employment predated April 9, 2011 ineligible for recovery).

**F.  Recovery for Failure to Provide Wage Statements**

Plaintiffs' seventh cause of action seeks recovery of statutory damages for Defendants' failure to provide written wage statements. Compl., ¶¶ 144-46. Related to the NYLL's requirement of annual notices, effective April 9, 2011, New York law obligates an employer to "furnish each employee with a statement with every payment of wages," listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details. NYLL § 195(3). An employee may receive $100 for each work week in which this

24

requirement is violated, for a total not to exceed $2,500.  NYLL § 198(1-d); *see Liang Huo v. Go Sushi Go 9th Ave*, No. 13-CV-6573 (KBF), 2014 WL 1413532, at *5 (S.D.N.Y. Apr. 10, 2014).

Each of the Plaintiffs attests that he never received such written statements in any of the weeks they worked for Defendants.  Orea Decl., ¶ 18; Velendez Decl., ¶ 21; Carrasco Decl., ¶ 18. As Plaintiffs have each worked more than 25 weeks after April 9, 2011 without receiving the statements, each is entitled to the full $2,500 in statutory damages.

## G.  Prejudgment Interest

### 1.  Legal Standards

Plaintiffs seek an award of prejudgment interest.  Pl. Mem., 12-13.  As Plaintiffs acknowledge, they may not receive prejudgment interest on any portion of their recovery for which they have been awarded federal liquidated damages.  *Id.* at 12 n.2 (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988)).  As FLSA liquidated damages are considered compensatory in nature and thus "serve as a form of pre-judgment interest," an additional award of interest on federal damages would be inappropriate.  *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 261 (S.D.N.Y. 2008).  By contrast, because liquidated damages provided for by the NYLL are considered punitive in nature, a plaintiff is "entitled to an award of prejudgment interest . . . on unpaid wages and spread of hours pay for which liquidated damages pursuant to the FLSA were not assessed," that is, the portion of compensatory recovery arising under state law.  *Angamarca*, 2012 WL 3578781, at *9 (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011)); *see also Reilly v. Natwest Market Group Inc.*, 181 F.3d 253, 265 (2d Cir. 1999).

Pursuant to state law, a successful plaintiff may receive prejudgment interest at a rate of nine percent per year. N.Y. C.P.L.R. §§ 5001, 5004. "[W]here damages are 'incurred at various times,' as is the case with unpaid wages over the course of several years, 'interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.'" *Castellanos*, 2014 WL 2624759, at *5 (quoting N.Y. C.P.L.R. § 5001(b)). The simple interest award "is calculated by multiplying the principal by the interest rate by the time period – from a singular, midpoint date – up until and including the date judgment is entered." *Angamarca*, 2012 WL 3578781, at *9; *see also Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071, 2009 WL 289653, at *7 (S.D.N.Y. Jan. 30, 2009), Report and Recommendation, *adopted sub nom.*, *Yao Lin v. Hayashi Ya II, Inc.*, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009). In determining the appropriate midpoint date, courts commonly look for the "median date between the earliest ascertainable date the cause of action existed and the date the action was filed [or last date the cause of action existed]." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012) (collecting cases).

## 2. Application

### a. Orea's Pre-Judgment Interest

Although Orea began working for Defendants in 1996, the earliest date on which his NYLL cause of action existed is January 23, 2007, while his employment ended on June 11, 2012. The approximate midpoint date between these two limits for calculating his prejudgment interest is therefore October 2, 2009. As calculated above, Orea is owed a total of $90,864 in unpaid wages. Subtracting the portion for which he is entitled to federal liquidated damages

($34,920), the Court finds that $55,944 is the principal to which the nine percent annual interest rate should be applied, from October 2, 2009 to the date judgment is entered.

### b.   Velendez's Pre-Judgment Interest

October 5, 2010 is the approximate midpoint between Velendez's start date of February 1, 2009 and his end date of June 8, 2012.  As calculated above, Velendez is owed $33,160.46 in unpaid wages, of which federal liquidated damages were assessed for $23,094.48.  Consequently, Velendez may receive prejudgment interest for a principal of $10,065.98 at an interest rate of nine percent per annum as applied from October 5, 2010 to the date of entry of judgment.

### c.   Carrasco's Pre-Judgment Interest

July 1, 2010 is the approximate midpoint between Carrasco's start date of September 1, 2008 and his end date of April 29, 2012.  As calculated above, Carrasco is owed $73,899.75 in unpaid wages, of which federal liquidated damages were assessed for $45,666.  Accordingly, Carrasco's prejudgment interest award should be based on a principal of $28,233.75 multiplied at a rate of nine percent per annum between July 1, 2010 and the date of entry of judgment.

## H.  Attorney's Fees

### 1.   Legal Standards

Plaintiffs request an award of attorney's fees in the amount of $13,137.50.  Pl. Mem., at 13; *see* Ex. H to Faillace Decl.  Plaintiffs are represented by the firm of Michael Faillace & Associates, P.C.  Faillace Decl., ¶ 13(i).  Under both the FLSA and the NYLL, which are fee-shifting statutes, a prevailing plaintiff may recover his reasonable attorney's fees and costs.  *See* 29 U.S.C. § 216(b); NYLL § 198(1-3).

27

In order to determine the appropriate fee award, courts typically start by determining the so-called lodestar amount, or "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010). "The reasonable hourly rate is the rate a paying client would be willing to pay," bearing in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. Determining a reasonable hourly rate requires examining current prevailing market rate for lawyers in the district in which the ruling court sits. *See Anthony v. Franklin First Financial, Ltd.*, 844 F. Supp. 2d 504, 507 (2d Cir. 2012). In determining the reasonable number of hours required by the case, the court must consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez.* 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted).

The plaintiff must "document the application [for fees and costs] with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983); *see also Scott v. City of N.Y.*, 626 F.3d 130, 132 (2d Cir. 2010). "[T]he burden is on the fee applicant to produce satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Angamarca*, 2012 WL 3578781 at *11 (quoting *Blum v. Stenson*, 456 U.S. 886, 896 n.11 (1984)). A court may also rely on its own knowledge of local, comparable rates. *Adorno v. Port Authority of N.Y. & N.J.*, 685 F. Supp. 2d 507, 511 (S.D.N.Y.

2010) (citing *Morris v. Eversley*, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004)).  Counsel for the prevailing party must submit evidence in support of the proposed figures and make a good faith effort to exclude excessive, redundant, or unnecessary hours from the fee request.  *Hensley*, 461 U.S. at 433-34; *accord Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 n.6 (2d Cir. 1999).

Ultimately, the district court's discretion to set a fee award is broad.  *Hensley*, 461 U.S. at 437; *Matusick v. Erie Cnty. Water Auth.*, – F.3d –, slip. op. at 74 (2d Cir. Feb. 24, 2014) ("We afford a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's superior understanding of the litigation and . . . what essentially are factual matters.") (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008)).

### 2. Reasonable Hourly Rate

Plaintiffs seek to recover fees for work performed by two attorneys, Michael Faillace and Joshua Androphy.  Faillace Decl., ¶ 13(i).[11]  Faillace is the managing member of the firm and has been practicing since 1983.  *Id.* at ¶ 13(i)(i).  In addition to serving as in-house employment counsel at International Business Machines between 1983 and 2000, he has taught employment discrimination at Fordham University and Seton Hall University law schools and speaks on employment law matters.  *Id.*  He seeks a rate of $450 an hour.  *Id.*  Androphy is a senior attorney at the firm and has practiced litigation since 2005.  *Id.* at 13(i)(ii).  Plaintiffs seek reimbursement for his work at his regular hourly rate of $400 per hour.  *Id.*

---

[11]     The time records submitted by Plaintiffs' counsel also include a notation for 0.40 hours work by "YR".  *See* Ex. H to Faillace Decl.  This individual is not otherwise identified or discussed in Plaintiffs' memorandum or supporting affidavits, and no award of fees is recommended for this work.

Courts in this District have determined in recent cases that a fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases. *See, e.g., Liang Huo v. Go Sushi Go 9th Ave.*, No. 13-CV-6573 (KBF), 2014 WL 1413532, at *8 (S.D.N.Y. April 10, 2014) (approving $350 rate for attorney with ten years' experience); *Gurung*, 851 F. Supp. 2d at 597 (noting $250 to $450 range); *Greathouse*, 2012 WL 5185591, at *6 (setting $300 rate in wage-and-hour default judgment, described as "not a complex case"); *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 514-15 (S.D.N.Y. 2011) (finding $450 for partners and $300 for associates appropriate). While there is no doubt that Faillace is highly experienced, given the relative simplicity of this case, the Court finds it appropriate to reduce Faillace's rate to $425 an hour, as another judge of this Court did recently. *See Galeana v. Lemongrass on Broadway Corp.*, No. 10-CV-7270 (GBD) (MHD), 2014 WL 1364493, at *13-14 (S.D.N.Y. Apr. 4, 2014) (reducing Faillace's rate from $450 to $425 given relatively straightforward procedure of default judgment and absence of novel issues); *see also Carrasco v. W. Vill. Ritz Corp.*, No. 11-CV-7843 (DLC) (AJP), 2012 WL 2814112, at *7 (S.D.N.Y. July 11, 2012) (awarding Faillace $375 an hour), Report and Recommendation, *adopted*, 2012 WL 3822238 (S.D.N.Y. Sept. 4, 2012); *cf. Angamarca*, 2012 WL 3578781, at *13 (awarding Faillace $450 an hour but reducing fees by 15 percent overall because of simplicity of case). Androphy's requested rate should also be reduced. For an associate with his level of comparable experience, $400 an hour is unreasonably high and a more appropriate hourly rate is $300. *See Galeana*, 2014 WL 1364493, at *21 (awarding $250 to another associate at Faillace's firm, a 2006 law school graduate with approximately one year less experience than Androphy).

### 3. Reasonable Hours

Plaintiffs have provided contemporaneous billing records and seek compensation for 13.8 hours of work completed by Faillace and 16.9 hours of work completed by Androphy. *See* Ex. H to Faillace Decl. Upon review of the billing entries submitted by counsel, the Court recommends a reduction as follows. Faillace seeks reimbursement for 4.5 hours of drafting the complaint, 1.8 hours of reviewing it, and 3.2 hours of "finalizing" and filing it with the court. *Id.* This appears excessive, especially as the complaint that was filed is in large part boilerplate. The Court recommends that Faillace be awarded fees for only 4.5 hours of this work. *See Carrasco*, 2012 WL 2814112, at *7 (noting boilerplate nature of papers, used by Faillace's firm in other cases, and declining to award fees for time purportedly spent "finalizing" and "filing" complaint).

Consequently, Faillace should be awarded fees for 8.8 hours at a rate of $425 per hour, or $3,740 in total. Androphy should be awarded $300 per hour for 16.9 hours, or $5,070. The total attorney's fees entered against the defaulting Defendants should therefore be $8,810.

### I. Costs

Finally, Plaintiffs seek to recover $650 in costs. *See* Proposed Judgment at 3, attached as Ex. I to Faillace Decl. An employee who prevails in a wage-and-hour action is entitled to recover costs. 29 U.S.C. § 216(b); NYLL § 663(1). The Court takes judicial notice of the Court's current filing fee of $350. *E.g.*, *Carrasco*, 2012 WL 2814112, at *7. However, Plaintiffs have provided proper documentation to support only an additional $80 in costs, in the form of affidavits which reflect payment of a $40 fee to the New York Secretary of State as part of service made on the two corporate Defendants. *See* Affidavits of Service dated March 11, 2013 (Dkt. Nos. 3, 4). Therefore, the Court should award $350 for the filing fee and $80 for service-related fees, for a

31

total of $430 in costs. *See Angamarca*, 2012 WL 3578781, at *13 (only documented costs recoverable).

### III.  CONCLUSION

For the reasons set forth, I recommend that the Court enter judgment against the defaulting Defendants in the amount of $396,992.64 in damages, in addition to prejudgment interest to be calculated as described above, as follows: (1) for Orea, $90,864 in compensatory damages for unpaid wages, $2,500 in statutory damages for failure to receive wage statement, $34,920 in federal liquidated damages, and $35,298 in New York liquidated damages; (2) for Velendez, $33,160.46 in compensatory damages, $2,500 in statutory damages, $23,094.48 in federal liquidated damages, and $16,978.38 in New York liquidated damages; and (3) for Carrasco, $73,899.75 in compensatory damages, $2,500 in statutory damages, $45,666 in federal liquidated damages, and $35,611.57 in New York liquidated damages.  Plaintiffs should also be awarded $8,810 in attorney's fees and $430 in costs.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable William H. Pauley III and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Pauley.

FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT

IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C.

§ 636(b)(1); Fed.R.Civ.P. 72.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP*

*v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated:  New York, New York
        August 26, 2014

JAMES L. COTT
United States Magistrate Judge

33